signal of its approach, except almost simultaneously with the crash; that at the time the driver entered the tracks he looked out of the door of the wagon to see if any car was coming, at a place where he had an unobstructed view of the track from the south about 1,200 feet; that he did not see any car, or the lights of any car, and so drove onto the track; that he also looked out of his wagon again after he drove on the tracks, where, looking behind, he could see a quarter of a mile down Main street; that he drove along the track between 200 and 300 feet, with two wheels about in the center between the rails and two wheels off on the right-hand side, when he started to turn off; that the horse was going on a jog; that as he was leaving the tracks the crash came, and the car went 150 feet beyond the point where it struck the wagon before it stopped; that the bridle and lines of the harness were broken, the panels of the wagon knocked in on the inside, the lights broken, the panels smashed in the rear, and one wheel dished; and that the driver was knocked out of the wagon, but that it did not tip over.

The plaintiff was nonsuited at the close of his proof on the ground that he had failed to prove that the driver of the wagon was free from contributory negligence. The driver had the right to use any part of the street, and to drive onto the tracks. The defendant had a paramount right over the driver to the use of the tracks, and the driver was bound to leave the tracks promptly on hearing the signal of the approaching car. He exercised caution and care when he entered upon the tracks, and looked back after he entered. He received no signal to warn him of the approach of the car until almost simultaneously with the collision. Nothing that he could have done after hearing the signal would have prevented the injury. He had a right to assume that the car would not run into him from behind without giving some warning of its approach and giving him a chance to get off the tracks. He also had a right to assume that the car would not approach him from the rear at a speed in excess of that prohibited by the ordinance. Giving, as we must on this appeal, the most favorable view of which the plaintiff's evidence is susceptible, a brief summary of which has been given, we think the learned trial court was not warranted in holding that the driver, under the circumstances presented here, was guilty of contributory negligence, as a matter of law, and that that question should have been submitted to the jury. Barringer v. United Traction Co., 101 App. Div. 330, 91 N. Y. Supp. 386, 998.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

### ST. JOHN v. UNION MUTUAL LIFE INS. CO.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1909.)

INTERPLEADER (§ 8*)—RIGHT TO RELIEF—STATUTES.

Code Civ. Proc. § 820, declares that a defendant in an action on a contract may before answer, on proof by affidavit that a person not a party to the action makes a demand against him for the same debt, apply for an order substituting such claimant and discharging him from liability to either on his paying the money into court, etc. *Held,* that where, in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an action on a policy payable to plaintiff as insured's wife or other desig-. nated beneficiary, and if no beneficiary survived to his personal representative, his personal representatives claimed the proceeds of the policy on the ground that plaintiff was not his wife, and that before his death insured had delivered the policy to a friend to keep it until he should call for it, and it remained there until it was delivered to an attorney for his personal representatives, there was a reasonable doubt as to plaintiff's right to the insurance, which justified an order of interpleader.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. § 9; Dec. Dig. § 8.*]

Williams and Robson, JJ., dissenting.

Appeal from Special Term, Jefferson County.

Action by Stella St. John against the Union Mutual Life Insurance Company on a life insurance policy issued on the life of Jay St. John, deceased. Defendant insurance company conceded its liability, but filed an application to interplead the personal representatives of the insured, on an affidavit claiming that both plaintiff and such personal representatives claimed the proceeds of the policy, offering to pay the amount thereof into court. Plaintiff claimed that the facts stated were insufficient to warrant an order substituting the personal representatives of the insured for the insurance company, and appeals from an order granting such relief. The facts are fully stated in the dissenting opinion of Mr. Justice WILLIAMS. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Burns & Burns, for appellant.
Hugo & Yost, for respondent.

KRUSE, J. I think the order should be affirmed. Section 820 of the Code of Civil Procedure provides that in certain actions, among others such as this, a defendant may at any time before answer, upon proof by affidavit that a person not a party to the action makes a demand against him for the same debt or property, without collusion, apply to the court, upon notice to that person and the adverse party, for an order to substitute that person in his place and to discharge him from liability, by paying the amount of the debt into court. While a mere naked demand is not sufficient to warrant the order, I think the affidavits upon which the order was granted are sufficient to show the nature of the claim, and that there is reasonable doubt as to the right of the plaintiff to the insurance moneys as against the adverse claimants. Under such circumstances, the insurance company should not be subjected to the hazard of determining which is rightfully entitled thereto. The order should be affirmed, with $10 costs and disbursements.

Order affirmed, with $10 costs and disbursements. All concur, except WILLIAMS and ROBSON, JJ., who dissent.

WILLIAMS, J. (dissenting). The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs, without prejudice to a renewal of the motion upon additional papers. The action was brought to recover the amount of an insurance policy

upon the life of Jay St. John. ' The plaintiff and the representative of the estate of the insured both claimed the insurance. The defendant conceded its liability to pay the money to the party really entitled to it, and this order was made upon its application substituting the representative of the estate, allowing the defendant to pay the money into court, and relieving it from further liability. The plaintiff insisted there were no facts shown in the papers authorizing the making of such an order.

The policy was not produced or used upon the motion, though shown to be in the possession of the representative. It did appear, however, that it was issued May 25, 1906, that it was made payable to the insured at the end of 15 years, or if he died before that time to the plaintiff as his wife, or such other beneficiary as might be designated in the manner provided in the policy, and if no beneficiary survived the insured to his personal representative; that he died June 18, 1908, within 2 years after the policy was issued; that the plaintiff was not his wife, but had lived with him as such for 10 years before he died; that he had a wife, Rose St. John, who survived him, but who had for many years lived with another man and had borne children by him; that the insured, shortly before his death, delivered the policy to a friend and told him to keep it until he (the insured) should call for it, and not to give it to any person but himself, and that when he called for it; that this friend kept the policy until the insured died, and then gave it to a lawyer, who has kept it since, and this lawyer appeared as attorney for the representative upon the hearing of the motion resulting in the order appealed from. These are the only facts really established by the motion papers bearing upon the designation by the insured of any beneficiary under the policy other than the plaintiff. There were some other things sworn to, which it may be well to refer to, viz.:

The defendant's local manager, and through whom the policy was issued, swore that he was informed and believed that before the insured died the plaintiff left him and went away with another man. The plaintiff, however, swore that she went away with her own son, 17 years old, to visit her father in Wisconsin, and while on her way she received word of insured's death, and returned, but too late to attend the funeral. The said manager also swore that he was informed and believed that the insured, after the plaintiff left him, delivered the policy to a party unknown to such manager, with instructions to him to hold the policy for the benefit of his estate, and to see to it that the plaintiff did not get the policy or the proceeds thereof; but, as we have already stated, the person to whom the policy was given swore what the directions actually given him by the insured were. The plaintiff also swore that the insured claimed to her that he had lost the policy while he was intoxicated, and that after his death she was offered $500, and as high as $900, to give up her interest in this and another policy upon insured's life, and that the insured had told her that he did not care for his relations, etc.; but we do not see that these things are material to this inquiry. It might further be said that plaintiff's statement as to the insured's wife living with another man and bearing children by him were only on information and belief, and the statement by defendant's manager as to insured's having

left a wife who is his widow, while absolute, and not on information and belief, could hardly have been known by him to be true, and this was the only proof there was such wife and widow. It may be said that we cannot know that there had been no dissolution of their marriage prior to her living with and bearing children by another man.

So much as to the facts appearing on the motion. Now as to the law. It is well settled in this state that the courts will be liberal in protecting an insurance company from conflicting claims to insurance moneys which it is ready and willing to pay to the person really entitled to it. But a mere claim by a third party, without reasonable grounds for such claim and real danger from the conflicting claims, will not authorize the release of the company and the substitution in its place of the third party, claimant, in an action brought to recover the insurance money. Code Civ. Proc. § 820; Boskowitz v. Boskowitz, 124 App. Div. 849, 109 N. Y. Supp. 490, and cases there referred to; Steiner v. E. R. Sav. Bank, 60 App. Div. 232, 70 N. Y. Supp. 223, and cases referred to; Hinsdale v. B. L. I. Co., 72 App. Div. 180, 76 N. Y. Supp. 448, and cases referred to. Applying these rules of law to the facts in this case, we have the third party, the insured's representative, claiming this insurance money; but there seems to be no evidence of any reasonable grounds for such claim, if, indeed, there are any grounds at all. He did not live during the term of 15 years, so as to be entitled to the same prior to his death. If he had, his personal representative would be entitled to it. In the event of his death before the expiration of the 15 years, his representative would only be entitled to the money in case the beneficiary named in the policy, the plaintiff, or any beneficiary otherwise designated as provided therein, survived. The plaintiff did survive. She is therefore entitled to it, unless the insured, during his life, designated some other beneficiary.

Now, the only claim that is suggested here is that by the delivery of the policy to another person before he died, and the directions given him orally with reference thereto, he in effect designated his own estate as beneficiary, instead of the plaintiff. There might possibly be some basis for this claim, if what the manager states on information and belief were to be regarded as true; but from the very nature of his statement he could give no competent evidence as to such direction by the insured. He does not state the source of his information, and, besides this, the man who had the policy after the death, and surrendered it to the lawyer, now the representative's attorney, swears he was the person to whom the policy was so delivered by the insured, and that the directions given him were merely to keep the policy until the insured called for it, not to give it to any person but himself, and that when he should call for it. There was no intimation whatever, in this direction, of a design to cut the plaintiff out of the policy as a beneficiary, or to make his own estate such beneficiary, in case he died before the expiration of the 15 years. So that there was no evidence before the court on the motion that the representative of the insured had any grounds whatever, reasonable or otherwise, for his claim to the insurance money, and in this condi-

tion of things the court had no grounds whatever for making the order.

This order should therefore be reversed, and the motion denied. I am desirous, however, that the defendant should have protection against conflicting claims to this money, if on another motion it can make the proper proof, and such motion may be made if the defendant desires.

ROBSON, J., concurs in this dissent.