ANNA B. KATZMAN, Appellant, v. ÆTNA LIFE INSURANCE Co., Defendant, and MINNIE KATZMAN, Respondent.

Argued May 25, 1955; decided July 8, 1955.

*Murray I. Sommer* for appellant. I. The Statute of Frauds is inapplicable to constructive trusts. (*Lightfoot* v. *Davis,* 198 N. Y. 261; *Falk* v. *Hoffman,* 233 N. Y. 199; *Foreman* v. *Foreman,* 251 N. Y. 237; *Equity Corp.* v. *Groves,* 294 N. Y. 8; *Latham* v. *Father Divine,* 299 N. Y. 22, 299 N. Y. 599; *Pattison* v. *Pattison,* 301 N. Y. 65; *Beatty* v. *Guggenheim Exploration Co.,* 225 N. Y. 380; *Cassidy* v. *Cassidy,* 283 App. Div. 618; *Blanco* v. *Velez,* 295 N. Y. 234; *Fischer* v. *New York Sav. Bank,* 281 App. Div. 747; *Mitchell* v. *Mitchell,* 265 App. Div. 27, 290 N. Y. 779; *Considine* v. *Considine,* 255 App. Div. 876; *Bernstein* v. *Prudential Ins. Co. of America,* 204 Misc. 775.) II. Delivery of the policy obviates the objection of the Statute of Frauds. (*Matter of Pastore,* 155 Misc. 247; *Matter of Van Alstyne,* 207 N. Y. 298; *Jackson* v. *Twenty-Third St. Ry Co.,* 88 N. Y. 520; *Marcus* v. *St. Louis Mut. Life Ins. Co.,* 68 N. Y. 625; *McGlynn* v. *Curry,* 82 App. Div. 431; *Ridden* v. *Thrall,* 125 N. Y. 572; *Loucks* v. *Johnson,* 70 Hun 565; *Jacobs* v. *Strumwasser,* 84 Misc. 28; *Opitz* v. *Karel,* 118 Wis. 527; *McEwen* v. *New York Life Ins. Co.,* 42 Cal. App. 133; *Matter of Chryssikos,* 135 N. J. Eq. 451.) III. Special Term properly

denied the motion for summary judgment. (*Joehl* v. *Tricarico*, 271 App. Div. 898; *President & Director of Manhattan Co.* v. *Monogram Associates*, 276 App. Div. 766; *American Agric. Chem. Co.* v. *Gatewood*, 260 App. Div. 861; *Matter of Loftus*, 193 Misc. 704; *Jacobson* v. *Jacobson*, 268 App. Div. 770; *First Trust & Deposit Co.* v. *Dent*, 263 App. Div. 1058; *Chelsea Exch. Bank* v. *Munoz*, 202 App. Div. 702.)

*Sidney Orenstein, David Drechsler* and *Herbert Ferster* for respondent. I. The alleged agreement upon which plaintiff relies is unenforcible under the provisions of subdivisions 1 and 9 of section 31 of the Personal Property Law. (*Bayreuther* v. *Reinisch*, 264 App. Div. 138, 290 N. Y. 553; *Meltzer* v. *Koenigsberg*, 277 App. Div. 1050, 302 N. Y. 523; *Matter of Ditson*, 177 Misc. 648; *Coler* v. *Coler*, 271 App. Div. 877, 297 N. Y. 488; *Matter of Douglas* v. *Irving Trust Co.*, 169 Misc. 716, 256 App. Div. 1070; *Matter of Seiler*, 258 App. Div. 303; *Mitchell* v. *Mitchell*, 265 App. Div. 27, 290 N. Y. 779; *Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314; *Fischer* v. *New York Sav. Bank*, 281 App. Div. 747; *Rubin* v. *Irving Trust Co.*, 305 N. Y. 288.) II. A policy of life insurance cannot be assigned without a writing, and delivery is immaterial in the absence of a writing. (*Matter of Adler* v. *Levene*, 107 Misc. 574, 191 App. Div. 40; *Bernstein* v. *Prudential Ins. Co. of America*, 204 Misc. 775.) III. The theory of constructive trust is inapplicable. (*Wooley* v. *Stewart*, 222 N. Y. 347; *Wojtkowiak* v. *Wojtkowiak*, 273 App. Div. 1052; *Cassidy* v. *Cassidy*, 283 App. Div. 618.) IV. The answering affidavit establishes that there is no triable issue of fact. (*General Investment Co.* v. *Interborough R. T. Co.*, 235 N. Y. 133; *Gnozzo* v. *Marine Trust Co. of Buffalo*, 258 App. Div. 298, 284 N. Y. 617; *Dodwell & Co.* v. *Silverman*, 234 App. Div. 362; *Anderson* v. *City of New York*, 258 App. Div. 588.)

*Albert Hirst* for New York State Association of Life Underwriters, *amicus curiæ*, in support of respondent's position. I. *Amicus curiæ* sponsored subdivision 9 because of an impressive line of court decisions. (*Hamlin* v. *Stevens*, 177 N. Y. 39; *Matter of Ditson*, 177 Misc. 648; *Matter of Block*, 258 App. Div. 342; *Considine* v. *Considine*, 255 App. Div. 876; *Rosseau* v. *Rouss*, 180 N. Y. 116; *Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314; *Mitchell* v. *Mitchell*, 177 Misc. 1050, 265 App. Div. 27, 290 N. Y,

779.) II. Our courts always have been emphatic in condemning claims asserted for the first time after death. (*Hamlin* v. *Stevens,* 177 N. Y. 39; *Matter of Ditson,* 177 Misc. 648; *Rosseau* v. *Rouss,* 180 N. Y. 116; *Considine* v. *Considine,* 255 App. Div. 876.) III. Neither part performance nor full performance by plaintiff is sufficient to take the alleged contract out of the operation of the Statute of Frauds. Nothing short of full performance by both parties will do that. (*Burns* v. *McCormick,* 233 N. Y. 230.) IV. Neither full nor part performance nor the alleged delivery to her of the insurance policy can take plaintiff's case out of the statute, subdivision 9 of section 31 of the Personal Property Law.

DYE, J. The plaintiff's complaint has been dismissed pursuant to rule 113 of the Rules of Civil Practice, on the ground that the cause of action is barred by the Statute of Frauds.

The plaintiff is the widow of David Katzman, deceased. The defendant is the sister of the deceased. They each claim the proceeds of a $5,000 policy on the life of the deceased, issued by the defendant Ætna Life Insurance Company — the widow, on the ground that as the original beneficiary named in the policy pursuant to an oral agreement, she is the victim of fraud and deceit — and the sister, on the ground that she is the presently named beneficiary. Pursuant to court order the Insurance Company has paid the net proceeds of the policy to the treasurer of the City of New York and has no further interest in the suit.

The main question raised by the motion is whether the action is barred by the Statute of Frauds which renders unenforcible any " contract to assign or an assignment  *  *  *  of a life  *  *  *  insurance policy  *  *  *  or a promise  *  *  *  to name a beneficiary of any such policy " unless the agreement or some note or memorandum thereof is in writing. (Personal Property Law, § 31, subd. 9.)

The allegations of the complaint, which for the purposes of this motion we accept as true, may be briefly summarized, viz.:

That plaintiff and decedent were married June 28, 1927; that they lived happily together until the marriage ended by the husband's death; that much of the time during their married life the husband was unemployed and depended for his support largely on the wife's earnings; that because of this adverse

economic status, they were unable to put aside any savings for sickness and death expenses, so the husband and wife agreed on or about May 15, 1944 — after some seventeen years of married life — that the husband would take out a policy on his life and name the wife as beneficiary if she, the plaintiff, would pay the premiums. The application was made on that date. The policy was issued and plaintiff was named beneficiary and the policy delivered to her. Thereafter she paid the whole or a substantial part of the annual premiums from her earnings. When the husband died accidentally on July 13, 1953, she made arrangements for his funeral and burial in reliance on the avails of the policy. After delivery of the policy to the plaintiff, as alleged in the complaint: '' without the knowledge and consent of the plaintiff herein, the said deceased, David Katzman, at the behest of and in conspiracy with his said sister, Minnie Katzman, surreptitiously withdrew and took from the possession of the plaintiff the aforesaid policy of life insurance and allegedly caused the beneficiary on or about the 21st day of December, 1950, to be changed from the plaintiff herein to the defendant, Minnie Katzman, sister of the insured.''

By way of relief, the plaintiff demands judgment that she be declared the legal owner of the policy; that the proceeds be paid to her and that the defendant sister-in-law be declared a trustee for and on behalf of the plaintiff.

The defendant filed an answer denying all of the material allegations of the complaint and set up the Statute of Frauds as an affirmative defense, demanding that the proceeds be paid to her as named beneficiary. Defendant then made a motion for summary judgment, in support of which she showed by affidavit, that on or about December 21, 1950, the deceased executed a request for a change of beneficiary in which he changed his beneficiary to '' Minnie Katzman, sister of the insured, if she survives the insured, otherwise to Rose Katzman, sister of the insured, if she survives the insured, otherwise to the executors or administrators of the insured.'' This request was duly accepted and countersigned by the Insurance Company on December 22, 1950, and indorsement of such change of beneficiary made on the policy. The policy had reserved to the decedent the right to change the beneficiary at any time.

Special Term denied defendant's motion for summary judgment on the ground that issues of fact were presented " which cannot be summarily disposed of by affidavits but rather should await complete determination by trial." The Appellate Division placed its decision on the ground that the action was barred by the statute.

The power of the court to treat a wrongdoer as a trustee *de son tort* or trustee ex maleficio is beyond question (*Lightfoot* v. *Davis*, 198 N. Y. 261; *Falk* v. *Hoffman*, 233 N. Y. 199). A constructive trust is " the formula through which the conscience of equity finds expression " (*Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380, 386; *Meinhard* v. *Salmon*, 249 N. Y. 458). (For an interesting discussion see Warren in 41 Harv. L. Rev. 309.) Constructive trusts are created by equity " whether the evidence on which they are based is oral or written, and whether the property involved is real or personal " (Bogart on Law of Trusts [Hornbook Series, 3d ed., § 78, p. 332, 1952]), such, for instance, as when the device of a constructive trust is needed to protect the rightful party against the acts of a wrongdoer. Violation of a confidential relation has produced injury to the survivor of the relationship as to personalty, such as proceeds of a war risk policy (*Blanco* v. *Velez*, 295 N. Y. 224) and realty (*Foreman* v. *Foreman*, 251 N. Y. 237) or has been accomplished by will (*Latham* v. *Father Divine*, 299 N. Y. 22) or by agreement (*Hartkopf* v. *Hesse*, 49 N. Y. S. 2d 162) or superior knowledge (*Cassidy* v. *Cassidy*, 283 App. Div. 618; *Stephens* v. *Evans*, 75 N. Y. S. 2d 909).

It is undeniable that subdivision 9 of section 31 of the Personal Property Law, enacted by chapter 104 of the Laws of 1943, effective March 11, 1943, under the sponsorship of the *amicus curiæ* with the approval of the Insurance Department, was designed as the insurance counterpart of section 347 of the Civil Practice Act to prevent fraud against a deceased person and to end litigation based upon unsupported oral agreements with decedents " to assign " or to " name beneficiaries ". However pertinent such enactment may be to situations depending for proof solely upon oral promise, it is not authority for dismissing the within complaint for insufficiency. Here we are not dealing with a cause of action based on an oral promise to give property in the future as in *Matter of Ditson* (177 Misc. 648); *Rosseau* v.

*Rouss* (180 N. Y. 116), or to name a beneficiary (*Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314), but rather to prevent consummation of a scheme between the insured and his sister to undo surreptitiously that which he, in fact, had done openly just as he had agreed to do. In this instance the plaintiff's case does not depend solely on an executory oral promise " to assign " the policy for, concededly, the policy when originally issued was delivered to her under circumstances indicating an intent " to assign " same to her. An insurance policy is but a chose in action (*Matter of Pastore,* 155 Misc. 247) and delivery to the assignee or donee with intent to vest title is essential to a valid gift (*Matter of Van Alstyne,* 207 N. Y. 298; *Jackson* v. *Twenty-Third St. Ry. Co.,* 88 N. Y. 520; *Marcus* v. *St. Louis Mut. Life Ins. Co.,* 68 N. Y. 625; *McGlynn* v. *Curry,* 82 App. Div. 431) and that delivery with such an intent also accomplishes a valid assignment (*Ridden* v. *Thrall,* 125 N. Y. 572; *Loucks* v. *Johnson,* 70 Hun 565). Delivery in this instance was not equivocal, but was a deliberate and intentional act to carry out the terms of an entirely natural and probable transaction, that is, an intent to protect the wife, if she survived, from the burden of expense incident to last illness and death of husband. The naming of a wife as beneficiary of a policy arouses no suspicion. It is a normal and natural thing to do. Here the complaint avers an intent to make the wife beneficiary and when the husband did, in fact, do just that, and delivered the policy to her, an effective *inter vivos* gift, or — in this setting — assignment was made (*Jacobs* v. *Strumwasser,* 84 Misc. 28; *Young* v. *Prudential Ins. Co.,* 131 N. Y. S. 968; *Opitz* v. *Karel,* 118 Wis. 527; *McEwen* v. *New York Life Ins. Co.,* 42 Cal. App. 133; *Matter of Chryssikos,* 135 N. J. Eq. 451) and such a transaction is not impaired by the Statute of Frauds (*Bernstein* v. *Prudential Ins. Co.,* 204 Misc. 775; *John Hancock Mut. Life Ins. Co.* v. *Sandrisser,* 95 N. Y. S. 2d 399).

The respondent and the *amicus curiæ* stress with great emphasis a statement made by our learned brother, Judge FROESSEL, when he sat as a Supreme Court Justice in *Siegel* v. *Tankleff* (95 N. Y. S. 2d 178, 182). There a widow claimed proceeds of a policy against decedent defendant's " girl friend ", an after-named beneficiary. The widow was allowed recovery on the theory that what she claimed the insured did " was quite

natural and probable under the circumstances. He had named her as beneficiary. He gave her possession of the policy." Because delivery had occurred prior to the effective date of the statute, Judge FROESSEL's statement that " an oral assignment or gift of a life insurance policy prior to March 11, 1943, when subdivision 9 was added to Section 31 of the Personal Property Law, by manual delivery of the policy to the assignee or donee with intent to make a gift thereof is valid " — has been seized upon as indicating a contrary result had delivery occurred subsequent to the statute. We do not believe the language, when read in its setting, bears such a construction — and even when read out of context — it cannot very well be reconciled with long-established decisional law respecting *inter vivos* gifts when delivery is accompanied by intent. The date of the delivery can be of little importance so long as it appears that it in fact occurred. Subsequent lower court cases have been decided without reference to the effective date of the statute (cf. *Bernstein* v. *Prudential Ins. Co.* and *John Hancock Mut. Life Ins. Co.* v. *Sandrisser,* both cited above).

The case of. *Fischer* v. *New York Sav. Bank* (281 App.. Div. 747), relied on by the majority of the court below, is distinguishable on its facts. There the deceased, pursuant to an oral agreement, named Fischer, a creditor, as beneficiary in a policy on his life. Subsequently the decedent named his wife beneficiary and, as a widow, her claim to the proceeds was upheld. In that case there was no delivery of the policy, no payment of premiums and no confidential relation such as springs from the marriage relation to support and give credence to the alleged oral agreement.

All that has been said pertaining to the words " to assign " is equally applicable to the statutory phrase " to name a beneficiary ".

This view does no violence to the general proposition that nothing short of full performance by both parties will operate to take the alleged contract out of the operation of the statute (*Burns* v. *McCormick,* 233 N. Y. 230; *Bayreuther* v. *Reinisch,* 264 App. Div. 138, affd. 290 N. Y. 553; *Meltzer* v. *Koenigsberg,* 99 N. Y. S. 2d 143, affd. 277 App. Div. 1050, affd. 302 N.,Y. 523). That rule must yield to the demands of justice, particularly, when ostensibly such statute is being used to preserve the fruits

of apparent wrongdoing in the hands of the wrongdoer (cf. *Latham* v. *Father Divine, supra*).

Here the husband's action under the circumstances was suspect. What motivated the husband to eliminate the name of his wife as beneficiary does not appear but, nonetheless, it had the consequence of perpetrating a fraud upon his wife with whom he had spent his entire married life in apparent harmony, mutual respect and confidence. On the face of the complaint, the husband committed an inexcusable wrong, which, if established by the weight of the credible evidence, the court has the equitable power — as well as the duty — to correct.

The widow should be allowed her day in court to show, if she can, that she is the victim of fraud and wrongdoing. As in any lawsuit, the burden of proof rests with the plaintiff widow to establish the allegations of her complaint. If the statute is to be used as a shield, it is only right that the court should know whether it is protecting a wrongdoer. On this record a triable issue of fact is presented which should not be summarily disposed of by motion but only after a plenary trial.

The judgment of the Appellate Division should be reversed, the order of Special Term reinstated, and the matter remitted to Special Term for further proceedings in accordance with the opinion herein, with costs to abide the event.

FULD, J. (dissenting). The question presented by this appeal is whether plaintiff may maintain an action on the oral agreement, allegedly made by her late husband, in the face of subdivision 9 of section 31 of the Personal Property Law. I do not see how she may, for that subdivision, insofar as here relevant, provides that

> "a contract to assign or an assignment * * * of a
> life * * * insurance policy, or a promise * * * to
> name a beneficiary of any such policy"

is "void" unless in writing and subscribed by the party to be charged. Concededly, there is in this case no writing or memorandum of any sort whatsoever.

The purpose of subdivision 9, as plain as its language, was to bar all claims based on oral evidence of an assignment, or of a promise to name a beneficiary, of a life insurance policy. To allow such claims, it was recognized, would introduce great

uncertainty into the disposition of life insurance proceeds; and, by opening the door to perjured testimony and fraudulent claims, it might work to defeat the intent of the deceased more often than to effectuate it. (See, e. g., Memorandum submitted to Governor by Superintendent of Insurance, in connection with bill adding subd. 9.) In requiring a writing, therefore, the legislature gave effect to the wise public policy favoring certainty in the rights of a deceased's named beneficiaries — the same policy which this court voiced some 50 years ago in *Hamlin* v. *Stevens* (177 N. Y. 39, 47–50), when it wrote that oral agreements, such as the one before us, "are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises. They are the natural resort of unscrupulous persons who wish to despoil the estates of decedents [pp. 47–48]. * * * Such contracts are dangerous. They threaten the security of estates and throw doubt upon the power of a man to do what he wills with his own [p. 50]."

Whether plaintiff's arrangement with her husband be considered an assignment, a promise to assign or a promise to name a beneficiary, it is precisely what, in express terms, the statute renders void. And it matters not, in the words of subdivision 9, whether it was "with or without consideration" to the promisor, in this case, the husband. Plaintiff wife seeks to avoid the inexorable force of the statutory language, first, by urging that her husband made a valid gift of the policy through manual delivery, and, second, by invoking the doctrine of constructive trust. We find no aid for her position in either theory, for both fly in the face of subdivision 9. To permit that provision to be by-passed would, in effect, be to write it out of the statute of frauds.

Delivery, without a writing or other signpost, is equivocal and ambiguous, and the purpose of the legislation, the policy underlying it, would be entirely frustrated were we to say that the requirements of the statute could be avoided by delivery. Upon the death of the insured, the policy must, of necessity, come into the hands of some other person. If that individual, though not the beneficiary named in the policy, were permitted to bring an action based on an oral assignment, by merely asserting delivery, the doors would again be opened wide to perjury and fraud, for the action would still be based on parol evidence, the very

thing that the statute, with its insistence on a writing, was designed to prohibit. Indeed, plaintiff is not even in possession of the policy at the present time, and there is nothing more than her oral assertions to lend any color or support to her claim of delivery; there is nothing more, in short, than just the parol evidence of an assignment which the statute categorically proscribes. The conclusion is inescapable that the statute means what it says, that it makes no exception for delivery, but voids any assignment or gift of a policy which is not evidenced by a writing.

Nor is there any place here for the doctrine of constructive trust. While plaintiff's account of the transaction, if true, may arouse our sympathy, that surely is not sufficient reason to ignore the statute of frauds. We misconceive the constructive trust doctrine if we were to apply it in this case to overcome the statute. (Cf. *Meltzer* v. *Koenigsberg,* 302 N. Y. 523, affg. 277 App. Div. 1050.) In point of fact, it appears that the provision in question was passed to prevent the very type of claim now being advanced by plaintiff. (See, e. g., *Mitchell* v. *Mitchell,* 290 N. Y. 779, affg. 265 App. Div. 27, which was followed by L. 1943, ch. 104, adding subd. 9.)

Claims asserted in opposition to a statute of frauds are, in the very nature of things, frequently of an appealing character, and the present one is undoubtedly no more so than many that will arise in the future. We may not, by judicial construction, repeal a plainly worded provision because it may appear to operate against a dutiful wife or because it may seem to work a hardship. The simple fact is that the statute in terms voids every oral assignment of a life insurance policy and every oral promise to name the beneficiary of such a policy. There is neither warrant nor justification for a court to dispense with the legislative requirement of a writing. The alleged agreement being oral is unenforcible. The Appellate Division was eminently correct in granting defendant's motion for summary judgment.

CONWAY, Ch. J., FROESSEL and BURKE, JJ., concur with DYE, J.; FULD, J., dissents in an opinion in which DESMOND and VAN VOORHIS, JJ., concur.

Judgment reversed, etc.